O

**JS-6**

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

MASOUMEH SADEGHI MAHONAK *et al.*,

                        Plaintiffs,

            v.

MARCO RUBIO *et al.*,

                        Defendants.

Case No. 8:24-cv-01443-FWS-DFM

**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS, [21], DENYING PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION, [34], AND DENYING DEFENDANTS' EX PARTE APPLICATION, [50]**

///

///

///

Before the court are two matters: (1) Defendant Marco Rubio and Defendant Robert Jachim's (collectively, "Defendants") Motion to Dismiss ("Motion to Dismiss"), (Dkt. 21); and (2) Plaintiffs' Motion for Preliminary Injunction ("Motion for Preliminary Injunction"), (Dkt. 34).[1]  Both matters are fully briefed.  (Dkts. 28, 32, 39, 41, 42, 46.)  The court found this matter appropriate for resolution without oral argument.  (Dkt. 44.)  Based on the state of the record, as applied to the applicable law, the court **GRANTS IN PART AND DENIES IN PART** the Motion to Dismiss and **DENIES** the Motion for Preliminary Injunction.

I.    **FACTUAL BACKGROUND**

   A.    **Statutory and Regulatory Framework**

   The Immigration and Nationality Act ("INA"), 8 U.S.C. § 1101 *et seq.*, authorizes the issuance of three broad categories of visas: family-based, employment-based, and diversity.  8 U.S.C. § 1151(a).  As relevant here, EB-2 visas, a subcategory of employment-based visas, permit noncitizens with "extraordinary ability in the sciences, arts, education, business, or athletics which has been demonstrated by sustained national or international acclaim and whose achievements have been recognized in the field through extensive documentation . . . to enter the United States to continue work in the area of extraordinary ability."  8 U.S.C. § 1153(b)(1)(A).  Employment-based visa applications generally proceed in the following manner.  First, the applicant submits Form I-140, Immigrant Petition for Alien Worker, to the United States Citizenship and Immigration Services ("USCIS").  *See id.* §§ 1153(b), 1154; 8 C.F.R. § 204.5.  If approved, USCIS sends the petition to the National Visa Center ("NVC"), which contacts the noncitizen beneficiaries to collect all necessary documents and fees.  8 U.S.C. § 1202; 8 C.F.R. §§ 204.1(a), 204.2(d).  Once the NVC

---

[1] References to "Plaintiffs" include the seventeen primary applicants and their derivative applicant family members.  (*See* Dkt. 1 ¶¶ 31-171.)

deems the petition "documentarily complete," and subject to the availability at that time, the NVC schedules the applicant for an interview with a consular officer at a United States embassy or consulate.  *See* 8 U.S.C. §§ 1201(a)(1), 1202; 22 C.F.R. §§ 42.62, 42.63, 42.65.  At the interview, the consular office directs the applicant to submit either a Form DS-230 or Form DS-260.  *See* 22 C.F.R. § 42.63(a).  Following the interview, the consular officer must either issue the visa or refuse it under applicable law.  8 U.S.C. §§ 1201(g), 1361; 22 C.F.R. §§ 42.71, 42.81(a).

The consular officer "may require the submission of additional information or question the alien on any relevant matter whenever the officer believes that the information provided . . . is inadequate to determine the alien's eligibility to receive an immigrant visa."  22 C.F.R. § 42.63(c).  Such information may be provided through Form DS-5535, Supplemental Questions for Visa Applicants.  *See* 60-Day Notice of Proposed Information Collection: Supplemental Questions for Visa Applicants, 88 Fed. Reg. 65,418 (Sept. 22, 2023).  Any additional material submitted is "considered part of the immigrant visa application."  22 C.F.R. § 42.63(c).  If the applicant produces additional evidence "tending to overcome the ground of ineligibility on which the refusal was based, the case shall be reconsidered."  *Id.* § 42.81(e).

**B.    Summary of the Complaint's Allegations**[2]

Plaintiffs consist of forty Iranian national immigrant visa applicants, including seventeen primary applicants "who are exceptional professionals in artificial intelligence and other critical and emerging technology fields" and applied for EB-2 visas, as well as twenty-three derivative applicants.  (Dkt. 1 ("Compl.") ¶¶ 1, 2, 31-171.)  Each primary applicant filed and received an approved Form I-140, submitted a

---

[2] For purposes of the Motion to Dismiss, the court "accept[s] factual allegations in the Complaint as true and construe[s] the pleadings in the light most favorable to the nonmoving party."  *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008).

Form DS-260, and received notification that their Form DS-260 applications were "documentarily qualified" or "documentarily complete." (*Id.* ¶¶ 6, 31-171.)  Further, all Plaintiffs have participated in a consular interview, had their visa refused under 8 U.S.C. § 1201(g), and submitted supplemental information via a DS-5535 form at the consular officer's request. (*See, e.g.*, *id.* ¶¶ 7, 31-171.)

Although Plaintiffs timely provided the DS-5535 responses, their applications have remained in administrative processing for between two to thirteen months. (*See, e.g.*, *id.* ¶¶ 9-13, 31-171.)  Plaintiffs allege the delays in adjudicating their visa applications have resulted in "severe emotional and financial strain." (*Id.* ¶¶ 13, 15, 262-72.)  Plaintiffs assert six claims stemming from this delay against Defendant Marco Rubio, the Secretary of the United States Department of State, and Defendant Robert Jachim, the Acting Director of the Office of Screening, Analysis, and Coordination within the Bureau of Consular Affairs' Visa Service Office.[3] (*Id.* ¶¶ 172-71, 273-340.)

In Counts One and Two, Plaintiffs seek an order declaring two policies unlawful under the Administrative Procedure Act ("APA"), 5 U.S.C. § 706(2)(A) and (D). (*Id.* ¶¶ 273-85 & Prayer for Relief.)  First, Plaintiffs challenge the "DS-5535 scheme," wherein Defendants require applicants to submit DS-5535 responses *after* their interviews, rather than alongside their applications. (*Id.* ¶¶ 277-79.)  Plaintiffs allege "the essence" of this scheme "is a decision by Defendants to prohibit Iranian immigrant visa applicants from submitting the DS-5535 prior to their immigrant visa interviews." (*Id.* ¶ 277.)  Second, Plaintiffs challenge the legality of the "221(g) non-final notice scheme," by which Defendants refuse visa applications using non-final decisions under INA § 221(g) based on information received after the consular

---

[3] As Defendants note, (*see* Dkt. 15, Dkt. 21 at 2 n.1, Dkt. 50 at 1 n.1), Defendant Rubio and Defendant Jachim were automatically substituted for Antony Blinken and Carson Wu, respectively, under Federal Rule of Civil Procedure 25(d). *See* Fed. R. Civ. P. 25(d).

interviews. (*Id.* ¶¶ 281-85.) Plaintiffs allege that both policies cause unreasonable delay in adjudicating Plaintiffs' visa applications. (*See, e.g.*, *id.* ¶¶ 5, 273-85.)

In Counts Three, Four, Five, and Six, Plaintiffs seek a declaration that Defendants' delay in adjudicating Plaintiffs' visa applications is unreasonable, as well as a writ of mandamus and order compelling Defendants to "complete all steps necessary to provide final adjudications of Plaintiffs' immigrant visa applications" within thirty days. (*Id.* ¶¶ 286-340 & Prayer for Relief.)

Defendants move to dismiss all six claims under Federal Rules of Civil Procedure 12(b)(1), 12(b)(3), 12(b)(6). (*See generally* Dkt. 21.) Plaintiffs seek a preliminary injunction on their third, fourth, fifth, and sixth claims ordering Defendants to fulfill their mandatory, non-discretionary duty to provide final adjudications of Plaintiffs' visa applications. (*See generally* Dkt. 34; Dkt. 34-22.)

## II.    LEGAL STANDARDS

### A.    Motion to Dismiss

#### 1.    Federal Rule of Civil Procedure 12(b)(1)

"Federal courts are courts of limited jurisdiction, possessing only that power authorized by Constitution and statute." *Gunn v. Minton*, 568 U.S. 251, 257 (2013) (citation and internal quotation marks omitted). A party may move to dismiss a case for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1). Fed. R. Civ. P. 12(b)(1). A defendant's challenge under Rule 12(b)(1) may be either facial or factual. *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004). A facial attack "accepts the truth of plaintiff's allegations but asserts that they 'are insufficient on their face to invoke federal jurisdiction.'" *Leite v. Crane Co.*, 749 F.3d 1117, 1121 (9th Cir. 2014) (quoting *Safe Air for Everyone*, 373 F.3d at 1039). A factual attack "contests the truth of the plaintiff's factual allegations, usually by introducing evidence outside of the pleadings." *Id.*

"In resolving a factual attack on jurisdiction, the district court may review evidence beyond the complaint without converting the motion to dismiss into a motion for summary judgment." *Safe Air for Everyone*, 373 F.3d at 1039 (citation omitted).  The court need not presume the truthfulness of the plaintiff's allegations in doing so. *Id.* "Once the moving party has converted the motion to dismiss into a factual motion by presenting affidavits or other evidence properly brought before the court, the party opposing the motion must furnish affidavits or other evidence necessary to satisfy its burden of establishing subject matter jurisdiction." *Savage v. Glendale Union High Sch.*, 343 F.3d 1036, 1039 n.2 (9th Cir. 2003) (citation omitted). Where "the jurisdictional disputes [are] not intertwined with the merits of the claim" and "the existence of jurisdiction turn[s] on disputed factual issues," the court may "resolve those factual disputes" where necessary. *See Friends of the Earth v. Sanderson Farms, Inc.*, 992 F.3d 939, 944 (9th Cir. 2021) (citation and internal quotation marks omitted); *Kingman Reef Atoll Invs., L.L.C. v. United States*, 541 F.3d 1189, 1195 (9th Cir. 2008).

### 2.   Federal Rule of Civil Procedure 12(b)(3)

Under Federal Rule of Civil Procedure 12(b)(3), a party may move to dismiss an action for improper venue.  Fed. R. Civ. P. 12(b)(3).  "The district court of a district in which is filed a case laying venue in the wrong division shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought."  28 U.S.C. § 1406(a).  Section 1406 and Rule 12(b)(3) "authorize dismissal only when venue is 'wrong' or 'improper' in the forum in which it was brought." *Atl. Marine Constr. Co. v. U.S. Dist. Ct. for W. Dist. of Texas*, 571 U.S. 49, 55 (2013).  "Whether venue is 'wrong' or 'improper' depends exclusively on whether the court in which the case was brought satisfies the requirements of federal venue laws . . . ." *Id.*  The plaintiff bears the burden of showing venue is proper. *Piedmont Label Co. v. Sun Garden Parking Co.*, 598 F.2d 491, 496 (9th Cir. 1979).

In deciding a motion to dismiss for improper venue, courts may consider facts outside the pleadings and need not accept the pleadings as true but must resolve all reasonable inferences and factual conflicts in the non-moving party's favor. *Murphy v. Schneider Nat'l, Inc.*, 362 F.3d 1133, 1137 (9th Cir. 2004) (citing *Argueta v. Banco Mexicana, S.A.*, 87 F.3d 320, 324 (9th Cir. 1996)).

### 3. Federal Rule of Civil Procedure 12(b)(6)

Rule 12(b)(6) permits a defendant to move to dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "[C]ourts must consider the complaint in its entirety, as well as other sources courts ordinarily examine when ruling on Rule 12(b)(6) motions to dismiss, in particular, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Tellabs, Inc. v. Makor Issues & Rts., Ltd.*, 551 U.S. 308, 322 (2007). To withstand a motion to dismiss brought under Rule 12(b)(6), a complaint must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). While "a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations," a plaintiff must provide "more than labels and conclusions" and "a formulaic recitation of the elements of a cause of action" such that the factual allegations "raise a right to relief above the speculative level." *Id.* at 555 (citations and internal quotation marks omitted); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (reiterating that "recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice"). "A Rule 12(b)(6) dismissal 'can be based on the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory.'" *Godecke v. Kinetic Concepts, Inc.*, 937 F.3d 1201, 1208 (9th Cir. 2019) (quoting *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990)).

"Establishing the plausibility of a complaint's allegations is a two-step process that is 'context-specific' and 'requires the reviewing court to draw on its judicial

1  experience and common sense.'" *Eclectic Props. E., LLC v. Marcus & Millichap Co.*,

2  751 F.3d 990, 995-96 (9th Cir. 2014) (quoting *Iqbal*, 556 U.S. at 679). "First, to be

3  entitled to the presumption of truth, allegations in a complaint . . . must contain

4  sufficient allegations of underlying facts to give fair notice and to enable the opposing

5  party to defend itself effectively." *Id.* at 996 (quoting *Starr v. Baca*, 652 F.3d 1202,

6  1216 (9th Cir. 2011)). "Second, the factual allegations that are taken as true must

7  plausibly suggest an entitlement to relief, such that it is not unfair to require the

8  opposing party to be subjected to the expense of discovery and continued litigation."

9  *Id.* (quoting *Starr*, 652 F.3d at 1216); *see also Iqbal*, 556 U.S. at 681.

10        Plausibility "is not akin to a 'probability requirement,' but it asks for more than

11  a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678

12  (quoting *Twombly*, 550 U.S. at 556). On one hand, "[g]enerally, when a plaintiff

13  alleges facts consistent with both the plaintiff's and the defendant's explanation, and

14  both explanations are plausible, the plaintiff survives a motion to dismiss under Rule

15  12(b)(6)." *In re Dynamic Random Access Memory (DRAM) Indirect Purchaser*

16  *Antitrust Litig.*, 28 F.4th 42, 47 (9th Cir. 2022) (citing *Starr*, 652 F.3d at 1216). But,

17  on the other, "[w]here a complaint pleads facts that are merely consistent with a

18  defendant's liability, it stops short of the line between possibility and plausibility of

19  entitlement to relief." *Eclectic Props. E.*, 751 F.3d at 996 (quoting *Iqbal*, 556 at U.S.

20  678). Ultimately, a claim is facially plausible where "the plaintiff pleads factual

21  content that allows the court to draw the reasonable inference that the defendant is

22  liable for the misconduct alleged." *See Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 at

23  556); *accord Wilson v. Hewlett-Packard Co.*, 668 F.3d 1136, 1140 (9th Cir. 2012).

24        **B.    Motion for Preliminary Injunction**

25

26        "A preliminary injunction is an extraordinary remedy that may be awarded only

27  if the plaintiff clearly shows entitlement to such relief." *Am. Beverage Ass'n v. City &*

28  *Cnty. of S.F.*, 916 F.3d 749, 754 (9th Cir. 2019) (en banc) (citing *Winter v. Nat. Res.*

*Def. Council, Inc.*, 555 U.S. 7, 22 (2008)).  A plaintiff seeking a preliminary injunction must demonstrate "[1] that he is likely to succeed on the merits, [2] that he is likely to suffer irreparable harm in the absence of preliminary relief, [3] that the balance of equities tips in his favor, and [4] that an injunction is in the public interest." *Id.* (quoting *Winter*, 555 U.S. at 20).  "The first factor under *Winter* is the most important," to the extent the court need not consider the remaining three elements where the plaintiff fails to show a likelihood of success on the merits.  *Garcia v. Google, Inc.*, 786 F.3d 733, 740 (9th Cir. 2015) (en banc).  Where the government is the nonmovant, "the last two *Winter* factors 'merge.'"  *Baird v. Bonta*, 81 F.4th 1036, 1040 (9th Cir. 2023) (quoting *Nken v. Holder*, 556 U.S. 418, 435 (2009)) (citation omitted).

Courts in the Ninth Circuit "also employ an alternative serious questions standard, also known as the sliding scale variant of the *Winter* standard." *Fraihat v. U.S. Immigr. & Customs Enf't*, 16 F.4th 613, 635 (9th Cir. 2021) (cleaned up).  Under that approach, "serious questions going to the merits" and a hardship balance that tips sharply toward the plaintiff can support issuance of an injunction, assuming the other two elements of the *Winter* test are also met." *All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1132 (9th Cir. 2011).

## III.    DISCUSSION

### A.    Defendants' Motion to Dismiss

Defendants raise several jurisdictional challenges to Plaintiffs' claims based on standing, mootness, and judicial reviewability under the APA and seek to dismiss the Complaint for improper venue and failure to state a claim.  (Dkt. 21 at 6-55.)  The court analyzes Defendants' arguments claim by claim, beginning with Plaintiffs' first and second claims.

1           1. <u>Motion to Dismiss Counts One and Two (The DS-5535 and § 221(g) Non-Final Notice Schemes) under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6)</u>

As discussed above, Plaintiffs' first and second claims challenge the lawfulness of: (1) the "DS-5535 scheme," which requires visa applicants to submit supplemental information after their consular interviews; and (2) the "§ 221(g) non-final notice scheme," which enables consular officers to "throttle legal immigration" by issuing non-final refusal notices. (*See, e.g.*, Compl. ¶¶ 273-85.) Defendants argue these claims fail because Plaintiffs have failed to demonstrate standing, establish that the first claim is judicially reviewable under the APA, or allege a plausible claim for relief. (Dkt. 21 at 20-21, 32-40, 46-50.)

Because "jurisdiction generally must precede merits in dispositional order," *Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 577 (1999), the court first considers Defendants' arguments regarding standing and judicial reviewability. *See Bates v. United Parcel Serv., Inc.*, 511 F.3d 974, 985 (9th Cir. 2007) (en banc) ("Standing is a threshold matter central to [a court's] subject matter jurisdiction."); *Alcaraz v. INS*, 384 F.3d 1150, 1161 (9th Cir. 2004) ("Under the Administrative Procedure Act, [courts] lack jurisdiction to review agency actions that are committed to agency discretion by law.") (internal quotation marks and citations omitted).

     a.   *Standing*

Defendants first challenge Plaintiffs' standing to assert their first and second claims. (Dkt. 21 at 20-21.) Article III standing is an "irreducible constitutional minimum" comprised of three distinct elements. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992). The plaintiff must demonstrate that they: "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016), *as revised* (May 24, 2016) (citations omitted). At the pleading

1    stage, the plaintiff must "clearly . . . allege facts demonstrating each element," *id.*

2    (cleaned up), and "demonstrate standing separately for each form of relief sought,"

3    *Friends of the Earth v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 185 (2000).

4        Defendants argue that Plaintiffs cannot demonstrate redressability or

5    traceability because declaring the alleged schemes unlawful would not "accelerate"

6    the administrative processing of Plaintiffs' visa applications and the administrative

7    delay is attributable to Plaintiffs' failure to establish their visa eligibility in the first

8    place.  (Dkt. 21 at 20-21.)  Plaintiffs generally argue that the standards for traceability

9    and redressability are "relaxed" when alleging a procedural injury and that the delay

10    in adjudicating their visa applications is traceable to Defendants because the timing of

11    DS-5535 responses "directly delays the adjudication of Plaintiffs' visa applications."

12    (Dkt. 28 at 15-17.)

13        Although procedural rights claims are subject to "less demanding" standards,

14    *Narragansett Indian Tribal Historic Pres. Off. v. Fed. Energy Regul. Comm'n*, 949

15    F.3d 8, 13 (D.C. Cir. 2020), "a claim of procedural injury does not relieve [p]laintiffs

16    of their burden—even if relaxed—to demonstrate causation and redressability,"

17    *Whitewater Draw Nat. Res. Conservation Dist. v. Mayorkas*, 5 F.4th 997, 1015 (9th

18    Cir. 2021).  "To establish causation, plaintiffs must allege that their injuries are 'fairly

19    traceable' to [the defendant's] conduct and 'not the result of the independent action of

20    some third party not before the court.'"  *Winsor v. Sequoia Benefits & Ins. Servs.,*

21    *LLC*, 62 F.4th 517, 525 (9th Cir. 2023) (quoting *Namisnak v. Uber Techs., Inc.*, 971

22    F.3d 1088, 1094 (9th Cir. 2020)).  To establish redressability, the plaintiffs must

23    allege that "correcting the alleged procedural violation *could* still change the

24    substantive outcome in the [plaintiffs'] favor; the [plaintiffs] need not go further and

25    show that it *would* effect such a change."  *Narragansett Indian Tribal Historic Pres.*

26    *Off.*, 949 F.3d at 13.  The plaintiffs need only show "that the relief requested—that the

27    agency follow the correct procedures—may influence the agency's ultimate decision

28

1    of whether to take or refrain from taking a certain action." *Salmon Spawning &*

2    *Recovery All. v. Gutierrez*, 545 F.3d 1220, 1226-27 (9th Cir. 2008).

3        Assuming *arguendo* that Plaintiffs adequately alleged traceability, Plaintiffs

4    have failed to address Defendants' argument regarding redressability, including by

5    explaining their theory of redressability, citing any law relevant to the element of

6    redressability, or identifying any allegations in the Complaint which demonstrate that

7    declaring the alleged schemes to be unlawful would redress the delay on Plaintiffs'

8    visa applications. (*See, e.g.*, Dkt. 28 at 15-17; Dkt. 32 at 4.) The court construes

9    Plaintiffs' failure to address redressability as a concession that Plaintiffs lack standing

10   to bring their first and second claims. *See, e.g.*, *Fateh v. Blinken*, 2024 WL 864378, at

11   *5 (D.D.C. Feb. 29, 2024) ("Since plaintiffs decided not to address the argument that

12   they lack standing, the [c]ourt will treat this argument as conceded."); *Escamilla v.*

13   *Echelon Cmtys.*, 2023 WL 8420947, at *6 (N.D. Cal. Dec. 4, 2023) ("When a plaintiff

14   fails to oppose a defendant's argument that a claim should be dismissed, courts have

15   construed such as a concession that the claim should be dismissed.") (collecting

16   cases); *CGN Resound A/S v. Callpod, Inc.*, 2013 WL 1190651, *5 (N.D. Cal. Mar. 21,

17   2013) (construing plaintiff's failure to address one of defendants' arguments as "a

18   concession that this claim element [is not satisfied]"). Therefore, the court **GRANTS**

19   the Motion to Dismiss as to Plaintiffs' first and second claims for lack of standing

20   under Rule 12(b)(1).

21            b.   *Judicial Reviewability*

22

23        Even if Plaintiffs had adequately alleged standing, the court would dismiss

24   Plaintiffs' first claim challenging the DS-5535 scheme because the court lacks a

25   judicially manageable standard by which to review the challenged agency actions.[4]

26

27   ───────────────

28   [4] Plaintiffs also do not address Defendants' arguments regarding reviewability in their
     opposing brief. (*See generally* Dkt. 28.)

1   (*See* Dkt. 21 at 31-36.)  Generally, "[t]here is a strong 'presumption in favor of

2   judicial review of final agency action' under the APA." *Jajati*, 102 F.4th at 1016

3   (quoting *Perez Perez v. Wolf*, 943 F.3d 853, 861 (9th Cir. 2019)).  However, this

4   presumption can be overcome "if the challenged agency action is 'committed to

5   agency discretion by law.'" *Id.* (quoting 5 U.S.C. §§ 701(a)(2)).  This exception

6   should be read "narrowly," and limited to "those rare circumstances where the

7   relevant statute is drawn so that a court would have no meaningful standard against

8   which to judge the agency's exercise of discretion." *Weyerhaeuser Co. v. U.S. Fish.*

9   *& Wildlife Serv.*, 580 U.S. 9, 23 (2018) (quoting *Lincoln v. Vigil*, 508 U.S. 182, 191

10  (1993)).

11      To determine "whether the court has a meaningful standard against which to

12  judge the agency's exercise of discretion," courts look to "the language of the statute"

13  and "whether the general purposes of the statute would be endangered by judicial

14  review." *Trout Unlimited v. Pirzadeh*, 1 F.4th 738, 751 (9th Cir. 2021) (cleaned up).

15  Courts may also consider "regulations, established agency policies, or judicial

16  decisions" to supply a meaningful standard of review.  *Pinnacle Armor, Inc. v. United*

17  *States*, 648 F.3d 708, 719 (9th Cir. 2011).

18      The court begins with "the context of the plaintiff's complaint" to "determine if

19  there is law to be applied in the instant case." *Trout Unlimited*, 1 F.4th at 752

20  (alteration adopted) (quoting *Perez Perez*, 943 F.3d at 864).  Plaintiffs allege that

21  Defendants' policy requiring Iranian visa applicants to submit the DS-5535 *after* their

22  interviews, rather than before, is inconsistent with 8 U.S.C. § 1202(b) and arbitrary

23  and capricious.[5]  (*See, e.g.*, Compl. ¶¶ 3-8, 231-243, 251-61, 273-80.)  As Defendants

24

25  _____

26  [5] In the Complaint, Plaintiffs briefly allege that the DS-5535 scheme violates 8 U.S.C.
    § 1202(b).  (*See, e.g.*, Compl. ¶ 4 & Prayer for Relief.)  Although the exact nature of

27  the alleged violation is unclear, Plaintiffs seem to suggest that section 1202(b)
    requires visa applicants to submit all documentation needed for consular officer to

28

1    note, Plaintiffs' allegations pertain to the timing of DS-5535 responses. (*See, e.g.*,

2    Dkt. 21 at 34; Dkt. 32 at 4; Compl. ¶¶ 251-61). Defendants argue this claim is

3    unreviewable because decisions regarding the timing of DS-5535 submissions are

4    committed to agency discretion under 8 U.S.C. § 1202(a). (Dkt. 21 at 32-36.)

5        The court agrees that Plaintiffs' APA claim challenging the DS-5535 scheme is

6    unreviewable. The relevant statute, section 1202(a), provides:

7            Every alien applying for an immigrant visa and for alien
8            registration shall make application therefor in such form
             and manner and at such place as shall be by regulations
9            prescribed. In the application the alien shall state his full
10           and true name, and any other name which he has used or

11    _____

12   assess their application *before* their consular interviews, and thus consular officers
     cannot request supplemental information via the DS-5535 *after* the interview. (*See,*
13   *e.g.*, Compl. ¶¶ 251-56, 280.) The court observes that Plaintiffs did not discuss this
14   alleged violation in their opposing brief, and thus have abandoned this claim. *See*
     *Walsh v. Nev. Dep't of Human Res.*, 471 F.3d 1033, 1037 (9th Cir. 2006) (finding a
15   plaintiff "effectively abandoned" a claim when he failed to respond to arguments in
16   motion to dismiss, and thus the claim could not be raised on appeal); *Allen v. Dollar*
     *Tree Stores, Inc.*, 475 F. App'x. 159, 159 (9th Cir. 2012) (affirming district court's
17   dismissal of certain claims where the plaintiff's "opposition to the motion to dismiss
18   failed to respond to [the defendant's] argument"); *Toranto v. Jaffurs*, 297 F. Supp. 3d
     1073, 1104 (S.D. Cal. 2018) (granting motion to dismiss where the plaintiff
19   abandoned the claim by failing to address the issue in the opposing brief). Regardless,
20   this allegation would not alter the court's conclusion because Plaintiffs have failed to
     plausibly allege that requesting information after a consular interview is unlawful.
21   Section 1202(b) does not prohibit consular officers from requesting supplemental
22   information, and the applicable regulations explicitly authorize such requests. *See* 8
     U.S.C. § 1202(b) ("The immigrant shall furnish to the consular officer with his
23   application a copy of a certification by the appropriate police authorities stating what
24   their records show concerning the immigrant; a certified copy of any existing prison
     record, military record, and record of his birth; and a certified copy of all other records
25   or documents concerning him or his case which may be required by the consular
26   officer."); 22 C.F.R. § 42.63(c) ("The officer may require the submission of additional
     information or question the alien on any relevant matter whenever the officer believes
27   that the information provided in Form DS-230 or Form DS-260 is inadequate to
28   determine the alien's eligibility to receive an immigrant visa.").

by which he has been known; age and sex; the date and place of his birth; and such additional information necessary to the identification of the applicant and the enforcement of the immigration and nationality laws as may be by regulations prescribed.

8 U.S.C. § 1202(a).

The broad language of 8 U.S.C. § 1202(a) suggests that decisions regarding the timing of DS-5535 responses are unreviewable. Section 1202(a) confers the Secretary of State with discretion to prescribe regulations regarding the "form and manner" of immigrant visa applications and what "additional information" is necessary "to the identification of the applicant and the enforcement of the immigration and nationality laws." 8 U.S.C. § 1202(a). This discretion encompasses decisions regarding when to collect information necessary to adjudicate visa applications. *See, e.g.*, *Taherian v. Blinken*, 2024 WL 1652625, at *6 (C.D. Cal. Jan. 16, 2024) ("Section 1202 leaves decisions regarding the "form and manner" of visa applications, such as when to collect relevant information, to be prescribed by agency regulations.").

However, section 1202(a) does not provide "substantive standards against which the Secretary's determination could be measured." *Legal Assistance for Vietnamese Asylum Seekers v. Dep't of State ("LAVAR")*, 104 F.3d 1349, 1353 (D.C. Cir. 1997). The statute contains no language dictating when information necessary to adjudicate visa applications should be collected but rather leaves these decisions to the discretion of the Secretary of State. *See, e.g.*, *id.* (concluding that the "broad language" of section 1202(a) provided no standard for reviewing a consular venue policy because "[t]hese determinations are left entirely to the discretion of the Secretary of State").

Plaintiffs identify no alternative statute or regulation governing the timing of DS-5535 responses. (*See generally* Dkt. 28.) In fact, Plaintiffs implicitly concede the discretionary nature of these decisions by alleging the applicable policy authorizes consular officers to solicit DS-5535 responses both during and after the interview.

1    (*See, e.g.*, Compl. ¶ 232 (quoting 86 Fed. Reg. 8745, 8746 (Feb. 5, 2021)).)  Because

2    neither the relevant statute nor regulations supply a framework for evaluating these

3    timing-related decisions, the court concludes it lacks a "meaningful standard against

4    which to judge the agency's exercise of discretion."  *Heckler v. Chaney*, 470 U.S. 821,

5    830 (1985).

6          In addition, the court finds the general purposes of section 1202(a) would be

7    endangered by judicial review.  "For reasons long recognized as valid, the

8    responsibility for regulating the relationship between the United States and our alien

9    visitors has been committed to the political branches of the Federal Government."

10   *Mathews v. Diaz*, 426 U.S. 67, 81 (1976).  Here, the plain language of section 1202(a)

11   provides the State Department with the discretion necessary to "balanc[e] complex

12   concerns involving security and diplomacy, State Department resources and the

13   relative demand for visa applications."  *LAVAR*, 104 F.3d at 1353.  Consequently,

14   evaluating Plaintiffs' challenge to the State Department's exercise of discretion under

15   section 1202(a) would require the court to second-guess "a policy decision entrusted

16   to another branch of government."  *Taherian*, 2024 WL 1652625, at *6.  In light of

17   the lack of statutory guidance and the complex factors involved in adjudicating visa

18   applications, the court concludes that Plaintiffs' DS-5535 claim is unreviewable.

19         The court notes that this conclusion is consistent with the decisions of three

20   other district courts that have found comparable claims brought by Plaintiffs' counsel

21   challenging the same DS-5535 scheme to be unreviewable under the APA.  *See, e.g.*,

22   *Pars Equality Ctr. v. Blinken*, 2024 WL 4700636, at *6 (N.D. Cal. Nov. 5, 2024)

23   (finding "no judicially manageable standards are available for judging how and when

24   [the] agency should exercise its discretion" regarding when to collect the DS-5535 and

25   dismissing the plaintiffs' claim with prejudice); *Dalmar v. Blinken*, 2024 WL

26   3967289, at *7 (D.D.C. Aug. 26, 2024) (dismissing the plaintiffs' claim because

27   "[t]he procedure for adjudicating visa applications—namely the submission of DS-

28   5535 following consular interviews—is . . . nonreviewable"); *Taherian*, 2024 WL

1652625, at *6 (dismissing the plaintiffs' claim challenging the timing of DS-5355 collection as unreviewable because section 1202(a) "leaves decisions regarding the 'form and manner' of visa applications, such as when to collect relevant information, to be prescribed by agency regulations and gives no other statutory guidance to a court evaluating the government's procedures").  Accordingly, as an independent and alternative basis, the court **GRANTS** the Motion to Dismiss as to Plaintiffs' first claim because the claim is unreviewable under the APA.[6]  Because no amendment could make this claim judicially reviewable, this claim is **DISMISSED WITH PREJUDICE**.

> c. *The Sufficiency of Count Two: The "§ 221(g) Non-Final Notice Scheme"*

Defendants seek to dismiss Plaintiffs' second claim for "illegal throttling" under Rule 12(b)(6) because: (1) Plaintiffs have failed to plead any facts in support of the allegation that Defendants use 8 U.S.C. § 1201(g) visa refusals to "throttle legal immigration"; and (2) the refusal of Plaintiffs' visa applications under 8 U.S.C. § 1201(g) constituted a final refusal sufficient to satisfy Defendants' duty to adjudicate Plaintiffs' visa applications.  (Dkt. 21 at 46-50.)  Although Plaintiffs generally argue that a refusal under section 1201(g) is not a final refusal, (*see, e.g.*, Dkt. 28 at 20-24), Plaintiffs do not address these arguments, or their second claim in general, in their opposing brief.  (*See generally* Dkt. 28.)

The court finds Plaintiffs have abandoned their second claim by failing to address Defendants' arguments regarding the sufficiency of this claim.  *See, e.g., Walsh v. Nev. Dep't of Human Res.*, 471 F.3d 1033, 1037 (9th Cir. 2006) (finding a

---

[6] Alternatively, Defendants argue that Plaintiffs have failed to allege that DS-5535 scheme is arbitrary and capricious.  (Dkt. 21 at 36-40.)  Because the court concludes Plaintiffs' first claim is unreviewable under the APA, the court does not address Defendants' alternative ground for dismissal.

plaintiff "effectively abandoned" a claim when he failed to respond to arguments in motion to dismiss, and thus the claim could not be raised on appeal); *Allen v. Dollar Tree Stores, Inc.*, 475 F. App'x. 159, 159 (9th Cir. 2012) (affirming district court's dismissal of certain claims where the plaintiff's "opposition to the motion to dismiss failed to respond to [the defendant's] argument"); *Toranto v. Jaffurs*, 297 F. Supp. 3d 1073, 1104 (S.D. Cal. 2018) (granting motion to dismiss where the plaintiff abandoned the claim by failing to address the issue in the opposing brief). Therefore, the court **GRANTS** the Motion as to Plaintiffs' second claim and **DISMISSES** this claim **WITH PREJUDICE**. *See, e.g.*, *Moore v. Apple, Inc.*, 73 F. Supp. 3d 1191, 1205 (N.D. Cal. 2014) ("[W]here a plaintiff simply fails to address a particular claim in its opposition to a motion to dismiss that claim, courts generally dismiss it with prejudice.") (internal quotation marks and citation omitted).

> 2. Motion to Dismiss Counts Three, Four, Five, and Six (Unlawful Withholding and Unreasonable Delay) under Federal Rules of Civil Procedure 12(b)(3) and 21

Next, Defendants argue the court should dismiss or transfer Plaintiffs' remaining claims for unreasonable delay and unlawful withholding for improper venue or, alternatively, sever these claims for improper joinder. (Dkt. 21 at 23-25, 29-31.)

> a. *Venue*

In cases brought against agencies, officers, or employees of the United States, venue is proper in any judicial district where "a defendant in the action resides," "a substantial part of the events or omissions giving rise to the claim occurred," or "the plaintiff resides." 28 U.S.C. § 1391(e)(1). In suits involving multiple plaintiffs, venue is proper "if *any* plaintiff resides in the District." *Californians for Renewable Energy v. U.S. Env't Prot. Agency*, 2018 WL 1586211, at *5 (N.D. Cal. Mar. 30,

2018) (citing *Exxon Corp. v. Fed. Trade Comm'n*, 588 F.3d 895, 898-99 (3rd Cir. 1978)).

Plaintiffs assert venue is proper because Plaintiff Mahonak resides in the Central District of California.  (Dkt. 28 at 17-19; Compl. ¶ 29.)  Defendants concede that Plaintiff Mahonak resides in this district but maintain that venue is improper because: (1) Plaintiff Mahonak's claims were rendered moot on May 6, 2024, before Plaintiffs filed the Complaint, when Plaintiff Mahonak's visa application was approved; and (2) Plaintiff Mahonak lacks standing to assert a claim on behalf of her spouse after the Supreme Court's decision in *Department of State v. Muñoz*, 602 U.S. 899 (2024).  (Dkt. 21 at 23-25; *see also* Compl. ¶ 37.)

The court disagrees with both of Defendants' premises.  An individual claim "becomes moot when a plaintiff actually receives all of the relief he or she could receive on the claim through further litigation," *Chen v. Allstate Ins. Co.*, 819 F.3d 1136, 1144 (9th Cir. 2016), and it is "impossible for a court to grant any effectual relief whatever to the prevailing party," *Knox v. Serv. Emps. Int'l Union, Local 1000*, 567 U.S. 298, 307 (2012) (internal quotation marks and citation omitted).  Thus, it is true that if Plaintiff Mahonak sought relief *only* as to her own visa application, her unlawful delay and unreasonable withholding claims would have been moot when her application was granted.  *See, e.g.*, *Joorabi v. Pompeo*, 464 F. Supp. 3d 93, 103 (D.D.C. 2020) ("Any claim with respect to an underlying visa application itself is thus moot, as the government already made a final decision about that application."); *Fateh*, 2024 WL 864378, at *4 ("[T]his Court and other courts in this district have dismissed claims concerning visa applications as moot once the government has made a final decision on the visa application.").

But "as long as the parties have a concrete interest, however small, in the outcome of the litigation, the case is not moot."  *Knox*, 567 U.S. at 307 (internal quotation marks and citations omitted); *Powell v. McCormack*, 395 U.S. 486, 499 (1969) (holding a claim is not moot merely because the "primary and principal relief

sought" is no longer available).  In this case, Plaintiff Mahonak has a concrete interest

in being reunited with her spouse, whose visa application remains in administrative

processing, and thus her claim is not moot.  *See, e.g.*, *Trump v. Hawaii*, 585 U.S. 667,

698 (2018) ("[A] person's interest in being united with [their] relatives is sufficiently

concrete and particularized to form the basis of an Article III injury in fact.");

*Yazdanpanahderav v. U.S. Dep't of State*, 2024 WL 3010874, at *3 (D.D.C. June 14,

2024) (finding the plaintiffs adequately demonstrated that the defendants'

unreasonable delay in scheduling consular interview resulted in a concrete injury for

purposes of standing by alleging the citizen spouse had an interest in being reunited

with their noncitizen spouse).

The Supreme Court's decision in *Muñoz*, 602 U.S. 899 (2024), does not

foreclose that concrete interest.  In *Muñoz*, the Supreme Court considered the

applicability of a narrow exception to the doctrine of consular nonreviewability "when

the denial of a visa allegedly burdens the constitutional rights of a U.S. citizen."  602

U.S. at 908 (quoting *Trump*, 585 U.S. at 703).  The plaintiff, an American citizen,

alleged that the exception applied, and thus her claims were reviewable, because the

State Department's denial of her noncitizen spouse's visa application violated her

constitutional rights.  *Id.* at 909.  The Court concluded the exception did not apply

because the plaintiff lacked a fundamental right to "bring a noncitizen spouse to the

United States" or "a constitutional right" to participate in her spouse's consular

proceedings.  602 U.S. 911, 917.

Defendants argue that *Muñoz* demonstrates that Plaintiff Mahonak lacks

standing because she "has no constitutional interest in [her] spouse's visa application."

(Dkt. 21 at 24.)  This argument misses the mark because "harms specified by the

Constitution itself" are not the exclusive means for a plaintiff to demonstrate a

concrete harm for standing purposes.  *TransUnion LLC v. Ramirez*, 594 U.S. 413, 425

(2021).  A plaintiff may also plead "traditional tangible harms, such as physical harms

and monetary harms" or "[v]arious intangible harms . . .  with a close relationship to

harms traditionally recognized." *Id.* The court finds Plaintiff Mahonak has

successfully pleaded such a harm by alleging that she suffered cognizable downstream

harms as a result of Defendants' delay in adjudicating her visa application, including

"severe emotional and financial strain" and separation from her spouse. (*See, e.g.*,

Compl. ¶¶ 13, 37-39, 269-72.) Because Plaintiff Mahonak has a concrete interest in

this suit, her claims are not moot, and venue is proper in the Central District of

California. *See Californians for Renewable Energy*, 2018 WL 1586211, at *5.

Accordingly, the court **DENIES** the Motion to Dismiss as to Defendants' request to

dismiss or transfer due to improper venue.

> b.  *Joinder*

In the alternative, Defendants argue that the court should sever Plaintiffs'

unreasonable delay and unlawful withholding claims into individual actions because

these claims do not arise out of the same transaction or present common questions of

law or fact. (Dkt. 21 at 29-31.) Plaintiffs argue that their third, fourth, fifth, and sixth

claims should not be severed because these claims are "based on similar factual

questions and legal questions" regarding Defendants' "unreasonabl[e] delay in

adjudicating their visas." (Dkt. 28 at 19.)

"Under Federal Rule of Civil Procedure 20, joinder is proper if (1) the plaintiffs

asserted a right to relief arising out of the same transaction and occurrence *and*

(2) some question of law or fact common to all the plaintiffs will arise in the action."

*Coleman v. Quaker Oats Co.*, 232 F.3d 1271, 1296 (9th Cir. 2000) (citing Fed. R. Civ.

P. 20(a); *Desert Empire Bank v. Ins. Co. of N. Am.*, 623 F.2d 1371, 1375 (9th Cir.

1980)). In addition, the "district court must examine whether permissive joinder

would 'comport with the principles of fundamental fairness' or would result in

prejudice to either side." *Visendi v. Bank of Am., N.A.*, 733 F.3d 863, 870 (9th Cir.

2011) (quoting *Coleman*, 232 F.3d at 1296). "If the test for permissive joinder is not

satisfied, a court, in its discretion, may sever the misjoined parties, so long as no

1    substantial right will be prejudiced by the severance." *Coughlin v. Rogers*, 130 F.3d

2    1348, 1350 (9th Cir. 1997) (citing Fed. R. Civ. P. 21).  The district court has the

3    "'inherent power' to deny joinder if it would undermine the 'orderly and expeditious

4    disposition of the case.'"  *Johnson v. High Desert State Prison*, --- F.4th -----, 2025

5    WL 301702, at *9 (9th Cir. Jan. 27, 2025) (quoting *Dietz v. Bouldin*, 579 U.S. 40, 45

6    (2016)).

7        The court finds Plaintiffs' unlawful withholding and unreasonable delay claims

8    satisfy the test for permissive joinder.  As to the "same transaction or occurrence"

9    element, Plaintiffs must demonstrate "factual similarity in the allegations supporting

10   [their] claims."  *Visendi*, 733 F.3d at 870.  "Rule 20's same transaction requirement

11   may comprehend a series of occurrences, depending not so much upon the

12   immediateness of their connection as upon their logical relationship."  *Gutta v.

13   Renard*, 2021 WL 533757, at *5 (N.D. Cal. Feb. 12, 2021) (internal quotation marks

14   and citation omitted).

15       The Ninth Circuit's decision in *Coughlin* is illustrative.  There, forty-nine

16   plaintiffs sought a writ of mandamus compelling the government to adjudicate six

17   different types of visa applications and petitions.  *Coughlin*, 130 F.3d at 1349.  The

18   district court severed the plaintiffs' claim into individual actions, reasoning that the

19   claims lacked the requisite factual similarity for joinder under Rule 20 because "the

20   existence of a common allegation of delay, in and of itself, does not suffice to create a

21   common transaction or occurrence" and the plaintiffs did not allege their claims arose

22   out of a "systematic pattern of events."  *Id.* at 1350.  The Ninth Circuit affirmed,

23   concluding the district court did not abuse its discretion under Federal Rules of Civil

24   Procedure 20 and 21 by severing these claims.  *Id.* at 1351.

25       By contrast, in this case, Plaintiffs applied for the same type of visa application

26   (an EB-2 visa), their applications are at the same stage of the proceedings

27   (administrative processing) and will be evaluated according to the same standards, and

28   the same policies purportedly caused the delay on all of Plaintiffs' applications

(namely, Defendants' policies requiring Iranian applicants to submit DS-5535 responses after their interview and mandating non-final refusals pending administrative processing).[7]  (*See, e.g.*, Compl. ¶¶ 2-19, 31-171.)  The court finds these allegations are sufficient to demonstrate that Plaintiffs' claims arose out a similar series of transactions or occurrences.  *See, e.g.*, *Gutta*, 2021 WL 533757, at *5 (finding the plaintiffs' claims stemming from delay on their visa petitions arose out of the same transaction or occurrence where "there is only one kind of petition at issue, each petition is evaluated under the same criteria, and [p]laintiffs allege that adjudication of all the petitions has been delayed for the same reason"); *Ray v. Cuccinelli*, 2020 WL 7353697, at *2 (N.D. Cal. Dec. 15, 2020) (finding the same transaction and occurrence requirement was met because adjudication of the plaintiffs' visa applications was "part of the same process" and the plaintiffs were "similarly situated"); *Jamal v. Pompeo*, 2019 WL 7865175, at *3 (C.D. Cal. Nov. 19, 2019) (denying a motion to sever because the plaintiffs alleged a common policy of delay).

As to common questions of law or fact, Rule 20 "requires only a single common question, not multiple common questions."  *Nguyen v. CTS Elecs. Mfg. Sols. Inc.*, 301 F.R.D. 337, 341 (N.D. Cal. 2014) (citations omitted); *see also Al Daraji v. Monica*, 2007 WL 2994608, at *9 (E.D. Pa. Oct. 12, 2007) (stating "[t]he threshold for the commonality requirement is very low") (internal quotation marks and citation omitted).  The court finds Plaintiffs' unlawful withholding and unreasonable delay

---

[7] Although it may be true that visa applications entail a "highly particularized, fact intensive process for each applicant," (Dkt. 21 at 36), this argument is not persuasive because Plaintiffs do not seek a decision on the merits of their visa applications from the court but rather an order compelling Defendants to act.  *See, e.g.*, *Gutta*, 2021 WL 533757, at *5 (rejecting the government's argument that "different evidence may be required to evaluate the merits of each petition" because the plaintiffs were "not seeking a merit determination" and "simply want USCIS to act").  The court notes that Defendants otherwise fail to identify any salient differences between Plaintiffs' applications.

claims present common questions regarding whether the delay in adjudicating

Plaintiffs' visa applications was reasonable under the factors set out in

*Telecommunications Research & Action Center ("TRAC") v. F.C.C.*, 750 F.2d 70, 79-

80 (D.C. Cir. 1984). *See, e.g.*, *Gutta*, 2021 WL 533757, at *5 (finding a common

questions of law and fact regarding "whether [d]efendant has a common policy or

practice of delaying adjudication of Form I-526 petitions" and "whether [d]efendant's

adjudication process for Form I-526 petitions is governed by a rule of reason"); *Ray*,

2020 WL 7353697, at *4 (finding common questions of fact and law where the

plaintiffs "unreasonable delay claim is motivated by delays—analyzed under the

*TRAC* factors—that are common to [p]laintiffs' H-4 visa status and EAD work

reauthorization petitions"). Thus, the court concludes Plaintiffs have met the

requirements for permissive joinder under Rule 20.

Finally, the court finds that joining Plaintiffs' unlawful withholding and

unreasonable delay claims "comport[s] with the principles of fundamental fairness,"

would not "result in prejudice to either side," and serves the interest of judicial

economy. *Visendi*, 733 F.3d at 870. Accordingly, the court concludes Plaintiffs'

remaining claims (counts three, four, five, and six) are properly joined and **DENIES**

the Motion to Dismiss as to Defendants' request to sever these claims.

> 3. <u>Motion to Dismiss Counts Three, Four, Five, and Six (Unlawful
> Withholding and Unreasonable Delay) under Federal Rules of Civil
> Procedure 12(b)(1) and 12(b)(6)</u>

As discussed above, the gravamen of Plaintiffs' third, fourth, fifth, and sixth

claims under the APA and Mandamus Act is that Defendants have unreasonably

delayed in adjudicating their visa applications. (*See, e.g.*, Compl. ¶¶ 286-340.)

Defendants argue these claims should be dismissed for lack of standing, mootness,

failure to allege a mandatory duty or unreasonable delay, and as barred by the doctrine

of consular nonreviewability. (Dkt. 21 at 21-23, 26-28, 40-45, 50-53.)

"Because mandamus relief and relief under the APA are in essence the same, when a complaint seeks relief under the Mandamus Act and the APA and there is an adequate remedy under the APA," the court "elect[s] to analyze the APA claim only." *Vaz v. Neal*, 33 F.4th 1131, 1135 (9th Cir. 2022) (internal quotation marks omitted) (quoting *R.T. Vanderbilt Co. v. Babbitt*, 113 F.3d 1061, 1065 (9th Cir. 1997)); *see also Indep. Min. Co. v. Babbitt*, 105 F.3d 502, 507 (9th Cir. 1997) (noting "the Supreme Court has construed a claim seeking mandamus under [§ 1361], 'in essence,' as one for relief under § 706 of the APA") (citing *Japan Whaling Ass'n v. Am. Cetacean Soc'y*, 478 U.S. 221, 230 n.4 (1986)).

The APA requires agencies to conclude matters "within a reasonable time," 5 U.S.C. § 555(b), and permits a court to "compel agency action unlawfully withheld or unreasonably delayed," *id.* § 706(1). "A court can compel agency action under this section only if there is 'a specific, unequivocal command' placed on the agency to take a 'discrete agency action,' and the agency has failed to take that action." *Vietnam Veterans of Am. v. Cent. Intel. Agency*, 811 F.3d 1068, 1075 (9th Cir. 2016) (quoting *Norton v. S. Utah Wilderness All.* ("*SUWA*"), 542 U.S. 55, 63-64 (2004)). "[T]he purportedly withheld action must not only be 'discrete,' but also 'legally *required*'— in the sense that the agency's legal obligation is so clearly set forth that it could traditionally have been enforced through a writ of mandamus." *Hells Canyon Pres. Council v. U.S. Forest Serv.*, 593 F.3d 923, 932 (9th Cir. 2010) (citing *SUWA*, 542 U.S. at 63). "Thus, a court may compel agency action under the APA when the agency (1) has a clear, certain, and mandatory duty, and (2) has unreasonably delayed in performing such duty." *Vaz*, 33 F.4th at 1136 (citations and internal quotation marks omitted).

a.    *Standing*

Defendants first argue that Plaintiffs lack standing to assert their third, fourth, fifth, and sixth claims for unlawful withholding and unreasonable delay. (Dkt. 21 at

26-28.)  As discussed above, Plaintiffs must demonstrate that they: "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo*, 578 U.S. at 338.  Defendants challenge each element of standing, arguing: (1) Plaintiffs have not been injured given that they have already received a final decision on their visa application under 8 U.S.C. § 1201(g) and lack a constitutional right of entry to the United States; (2) any delay was caused by Plaintiffs' failure to establish their visa eligibility in the first place; and (3) Plaintiffs' claims are not redressable because no law mandates reconsideration of a visa application refusal under 8 U.S.C § 1201(g). (Dkt. 21 at 26-28.)

The court finds Defendants' arguments unpersuasive.  First, the court rejects Defendants' assertion that the consular officers' refusal of Plaintiffs' visa applications for administrative processing under 8 U.S.C. § 1201(g) constituted final decisions. "Courts have consistently recognized that where the application is still undergoing administrative processing, even where a refusal has been relayed, the decision is not final." *Nusrat v. Blinken*, 2022 WL 4103860, at *5 (D.D.C. Sept. 8, 2022) (internal quotation marks and citation omitted) (collecting cases); *see also Alam v. Blinken*, 2024 WL 4804557, at *5 (E.D. Cal. Nov. 15, 2024) ("A refusal for administrative processing that indicates another adjudication is forthcoming pending additional document submission and review hardly appears to be a final decision."); *Aminzadeh v. Blinken*, 2024 WL 3811153, at *4 (C.D. Cal. Aug. 9, 2024) ("The mere fact that the [State] Department has chosen to characterize this action as a 'refusal' does not necessarily make it a final decision; 'the focus should be on what is actually happening.'") (quoting *Vulupala v. Barr*, 438 F. Supp. 3d 93, 98 (D.D.C. 2020)); *Durham v. Blinken*, 2024 WL 3811146, at *5 (C.D. Cal. Aug. 8, 2024) ("'[R]efusals' for further 'administrative processing' have been repeatedly found to not constitute a final adjudication of the visa application."); *Kiani v. Blinken*, 2024 WL 658961, at *4-5 (C.D. Cal. Jan. 4, 2024) (same); *Shahijani v. Laitinen*, 2023 WL 6889774, at *3

1    (C.D. Cal. Oct. 6, 2023); *Billoo v. Baran*, 2022 WL 1841611, at *4 (C.D. Cal. Mar.

2    18, 2022) (same); *Gonzalez v. Baran*, 2022 WL 1843148, at *2 (C.D. Cal. Jan. 11,

3    2022) (same).

4         Here, Plaintiffs allege that they received non-final refusals under section

5    1201(g), submitted supplementary DS-5535 responses at the consular officers'

6    request, were placed in administrative processing, and have otherwise received no

7    updates on their applications.  (Compl. ¶¶ 6-13, 31-171.)  Accepting these allegations

8    as true, the court finds Plaintiffs have plausibly alleged that they have not received a

9    final decision on their visa applications.[8]  Absent a final decision, the court further

10   finds Plaintiffs' allegations that the delay on their visa applications resulted in severe

11   "financial strain," "emotional distress," and "psychological harm" sufficient to plead

12   an injury-in-fact for purposes of standing.  (*Id.* ¶¶ 13, 15, 262-72); *see also Ahmed v.

13   Blinken*, --- F. Supp. 3d ----, 2024 WL 4903771, at *3 (D.D.C. 2024) ("Courts in this

14   district have consistently rejected [the government's] argument that a visa applicant

15   cannot allege injury because they do have a right to enter the United States" and

16   "conclude[ed] that a plaintiff suffers an injury in fact when an unreasonable delay in

17   visa adjudication causes financial or other hardship, such as separation from family

18   members."); *Yaghoubnezhad v. Stufft*, 734 F. Supp. 3d 87, 96 (D.D.C. 2024)

19   (concluding the plaintiffs alleged a "concrete injury" due to "cognizable downstream

20   harms" caused by the delay in processing their visa applications); *Nine Iraqi Allies

21   Under Serious Threat Because of Their Faithful Service to the United States v. Kerry*,

22   168 F. Supp. 3d 268, 282 (D.D.C. 2016) (concluding the plaintiffs "have suffered an

23   injury in fact" based on "the failure to receive final decisions on their [visa]

24   applications within a reasonable period").

25

26

27   _____

28   [8] The court also declines to grant the Motion to Dismiss with respect to Defendants'
     mootness argument premised upon the same reasoning.  (*See* Dkt. 21 at 21-23.)

Second, the court finds Plaintiffs have plausibly alleged traceability. As discussed above, traceability requires that the plaintiffs' "injuries are 'fairly traceable' to [the defendant's] conduct and 'not the result of the independent action of some third party not before the court.'" *Winsor*, 62 F.4th at 525 (quoting *Namisnak*, 971 F.3d at 1094). Plaintiffs allege that Defendants have failed to issue decisions on their application within a reasonable time even though they have "fulfilled all necessary administrative requirements to obtain the immigrants visas." (*See, e.g.*, Compl. ¶¶ 2-19, 31-171.) These allegations are sufficient to demonstrate traceability at the pleading stage, even if, as Defendants argue, Plaintiffs contributed to the delay. *See, e.g.*, *Sharma v. U.S. Dep't of Homeland Sec.*, --- F. Supp. 3d ----, 2024 WL 4647617, at *4 (N.D. Cal. 2024) ("[T]he Ninth Circuit has made clear that a plaintiff need not allege that a defendant was the sole source of [its] injury and need not eliminate any other contributing causes to establish its standing.") (internal quotation marks omitted) (quoting *Isabel v. Reagan*, 394 F. Supp. 3d 966, 973 (D. Ariz. 2019)).

Third, the court finds Plaintiffs have adequately alleged redressability.[9] Plaintiffs seek final adjudication of their visa applications, which remain in "administrative processing." (*See, e.g.*, Compl. ¶¶ 2-19, 31-171, & Prayer for Relief.) "When plaintiffs' 'applications are still pending administrative processing, the

---

[9] The court finds that Defendants' argument that they lack a mandatory duty to reconsider a refusal of a visa application under section 1201(g) goes to the merits of Plaintiffs' claims, rather than standing. *See, e.g.*, *Vaz*, 33 F.4th at 1135 ("[T]he requirements for obtaining relief under the APA go to the merits, not to subject matter jurisdiction.") (citation omitted); *Williston Basin Interstate Pipeline Co. v. An Exclusive Gas Storage Leasehold & Easement in the Cloverly Subterranean Geological Formation*, 524 F.3d 1090, 1094 (9th Cir. 2008) ("As a general rule, when the question of jurisdiction and the merits of the action are intertwined, dismissal for lack of subject matter jurisdiction is improper.") (cleaned up). The court declines to address this argument as part of its standing analysis and instead discusses Defendants' arguments regarding mandatory duty when analyzing the merits of counts three, four, five, and six. *See section III.A(3)(b), infra.*

1   [government's] review of their applications is not complete,' and the plaintiffs'

2   injuries 'may be redressed with an order to complete that review more

3   expeditiously.'" *Babaei v. U.S. Dep't of State*, 725 F. Supp. 3d 20, 26-27 (D.D.C.

4   2024) (alteration adopted) (quoting *Khazaei v. Blinken*, 2023 WL 6065095, at \*4

5   (D.D.C. Sept. 18, 2023)).  The court concludes an order compelling Defendants to

6   adjudicate Plaintiffs' visa application "would remedy [their] injuries stemming from

7   the alleged unreasonable delay by ending the interim processing stage." *See, e.g.*,

8   *Ahmed*, --- F. Supp. 3d ----, 2024 WL 4903771, at \*3 (concluding the plaintiff's

9   injuries stemming from unreasonable delay while her visa application remained in

10   "administrative processing" were redressable because "[a]n order by this court

11   compelling adjudication of her visa—not 're-adjudication,' but rather completion of

12   the process—would remedy her injuries by freeing her from the interim 'processing'

13   stage'"); *Afghan & Iraqi Allies Under Serious Threat Because of Their Faithful*

14   *Service to the United States v. Pompeo*, 2019 WL 367841, at \*8 (D.D.C. Jan. 30,

15   2019) ("Plaintiffs seek final adjudication of their applications; not a specific outcome.

16   If Plaintiffs are granted a visa, their injury will be redressed.  If Plaintiffs are finally

17   denied at any of the intermediary steps, although it is not their desired outcome, their

18   injury—the lack of adjudication—also will be redressed.").  Accordingly, Plaintiffs

19   have adequately established standing to assert their unlawful withholding and

20   unreasonable delay claims.

21               b.   *Mandatory Duty and Consular Nonreviewability*

22

23        Defendants argue that Plaintiffs have failed to allege a clear, non-discretionary

24   duty based on Defendants' purported delay in acting because: (1) any reconsideration

25   of the refusal of Plaintiffs' visa applications is discretionary and not subject to a

26

27

28

1  mandatory timeframe;[10] and (2) the refusal of Plaintiffs' visa applications under 8

2  U.S.C. § 1201(g) is final and thus not judicially reviewable under the doctrine of

3  consular nonreviewability. (Dkt. 21 at 40-45.) Plaintiffs allege that Defendants have

4  a mandatory duty to "review and adjudicate" their visa applications, 8 U.S.C.

5  § 1202(b), within a "reasonable time," 5 U.S.C. § 555(b). (Dkt. 21 at 37-40; Compl.

6  ¶¶ 200-25.)

7         The court finds Plaintiffs have sufficiently alleged a mandatory duty. Even in

8  the absence of a binding deadline to issue a final decision on a visa application, "[a]

9  consular office is required by law to act on visa applications." *Patel v. Reno*, 134 F.3d

10 929, 932 (9th Cir. 1997). In particular, 8 U.S.C. § 1202(b) imposes a non-

11 discretionary duty to "review and adjudicate" visa applications. 8 U.S.C. § 1202(b).

12 As several other courts have concluded, the initial refusal of Plaintiffs' visa

13 applications pending "administrative processing" did not discharge this duty because

14 there was no final adjudication. *See, e.g.*, *R2 Technologies Corp. v. Rubio*, 2025 WL

15 436306, at *4 (D.D.C. Feb. 7, 2025) (agreeing with "the majority view" that "[i]ssuing

16 a final decision on a visa application is plainly a discrete agency action . . . required by

17 both the APA and federal regulations" and a provisional refusal pending

18 administrative processing is not a final decision); *Sheikhalizadehjahed v. Gaudiosi*,

19 2024 WL 4505648, at *7 (E.D. Cal. Oct. 16, 2024) ("Any other conclusion about

20 _____

21 [10] Defendants principally rely on *Karimova v. Abate*, 2024 WL 3517852 (D.C. Cir.

22 July 24, 2024) in support of this argument. As the court has noted previously, this
   authority is not binding and lacks precedential or persuasive value to the case at bar.

23 *See Hajizadeh v. Blinken*, 2024 WL 3638336, at *3 n.3 (D.C.C. Aug. 2, 2024)

24 (declining to follow *Karimova* because it is "an unpublished opinion, and 'a panel's
   decision to issue an unpublished disposition means that the panel sees no precedential

25 value in that disposition'") (citing D.C. Cir. R. 36(e)(2)); *Maadarani v. Mayorkas*,

26 2024 WL 4674703, at *8 (E.D. Cal. Oct. 31, 2024) ("The [c]ourt is not persuaded by
   Defendants' reliance on *Karimova*'s holding regarding § 555(b). *Karimova* primarily

27 relied on the Foreign Affairs Manual (FAM) to determine that an initial visa refusal
   constitutes a final decision" but "the FAM "lack[s] the force of law" in the Ninth

28 Circuit.") (citations omitted).

[section] 1202(b) and circumstances like these would allow [the State Department] to evade any judicial review of delayed adjudications by issuing pro forma refusals while continuing to administratively process cases."); *Aminzadeh*, 2024 WL 3811153, at *4 ("[R]efusal for administrative processing is *not* a final decision and therefore does not discharge the agency's obligation to adjudicate visa applications."). In other words, because Plaintiffs' visa applications are still pending, Defendants' duty under section 1202(b) remains outstanding. *See, e.g.*, *Barazandeh v. U.S. Dep't of State*, 2024 WL 341166, at *6 n.5 (D.D.C. Jan. 30, 2024) ("[T]he 'clear duty' that defendants have allegedly breached is not a duty to reconsider a refused visa application, but a consular officer's duty to review and adjudicate immigrant visa applications as set out in 8 U.S.C. § 1202(b).").

Further, consular officers must render a final adjudication on visa applications "within a reasonable time." 5 U.S.C. § 555(b). Section 555(b) generally "requires agencies to 'conclude a matter presented to it' 'within a reasonable time,'" meaning that agencies have "a duty to fully respond to matters that are presented to it under its internal processes." *In re A Cmty. Voice*, 878 F.3d at 784 (quoting 5 U.S.C. § 555(b)) (citing *In re Am. Rivers & Idaho Rivers United*, 372 F.3d 413, 418 (D.C. Cir. 2004)). The use of the term "shall" in this statute is "mandatory language" that "usually connotes a requirement." *Maine Cmty. Health Options v. United States*, 590 U.S. 296, 310 (2020) (citations and internal quotation marks omitted); *see also Nat. Res. Def. Council, Inc. v. Perry*, 940 F.3d 1072, 1078 (9th Cir. 2019). Accordingly, the court concludes section 1202(b) and section 555(b) require the processing of visa applications "within a reasonable time under the APA." *Borzouei v. Bitter*, 2022 WL 17682659, at *4 (S.D. Cal. Dec. 14, 2022) (citing 5 U.S.C. § 555(b)); *see also Khan v. Blinken*, 2024 WL 3446432, at *5 (E.D. Cal. July 17, 2024) (finding a non-discretionary duty under 5 U.S.C. § 555 requiring "adjudication of immigrant visa applications within a reasonable time"); *Iqbal v. Blinken*, 2023 WL 7418353, at *7

(E.D. Cal. Nov. 9, 2023) (finding "[t]he APA imposes a clear nondiscretionary duty"
on defendants to adjudicate immigrant visa petitions within a reasonable time).

Finally, the doctrine of consular nonreviewability does not apply to the case at
bar. Although "a consular official's decision to deny a visa to a foreigner is not
subject to judicial review," *Khachatryan v. Blinken*, 4 F.4th 841, 849 (9th Cir. 2021),
suits challenging "the authority of the consul to take or fail to take an action" are
reviewable, *Patel*, 134 F.3d at 931. In this case, Plaintiffs have adequately pleaded
that Defendants failed to issue a final decision on their visa applications after the
applications were refused for administrative processing. (*See, e.g.*, Compl. ¶¶ 31-
171.) Because Plaintiffs challenge only the delay, rather than the substance, of the
consular officers' decisions, the doctrine of consular nonreviewability does not
preclude judicial review. *See, e.g.*, *Aminzadeh*, 2024 WL 3811153, at *5 (rejecting
defendants' argument that the doctrine of consular nonreviewability applied because
the consular officer's refusal of the plaintiff's application was "a refusal for further
administrative processing, not a final decision"); *Abbassi v. Gaudiosi*, 2024 WL
1995246, at *4 (E.D. Cal. May 6, 2024) (agreeing with the "prevailing position among
most other district courts" that consular nonreviewability does not bar review of a visa
application in administrative processing).

In sum, the court concludes Plaintiffs have sufficiently alleged that "Defendants
have a nondiscretionary duty to complete the administrative processing and must
satisfy that duty within a reasonable time." *Shahijani*, 2023 WL 6889774, at *3.

c.    *Unreasonable Delay*

To determine whether an agency's delay is unreasonable, the court considers
the six "*TRAC*" factors. *In re A Cmty. Voice*, 878 F.3d at 783-84 (citing *Indep. Min.*,
105 F.3d at 507); *see also TRAC*, 750 F.2d at 79-80. The *TRAC* factors include:

> (1) the time agencies take to make decisions must be
> governed by a "rule of reason["];]

(2) where Congress has provided a timetable or other
indication of the speed with which it expects the agency
to proceed in the enabling statute, that statutory scheme
may supply content for this rule of reason;

(3) delays that might be reasonable in the sphere of economic
regulation are less tolerable when human health and
welfare are at stake;

(4) the court should consider the effect of expediting delayed
action on agency activities of a higher or competing
priority;

(5) the court should also take into account the nature and
extent of the interests prejudiced by delay; and

(6) the court need not "find any impropriety lurking behind
agency lassitude in order to hold that agency action is
'unreasonably delayed.'"

*Vaz*, 33 F.4th at 1137 (quoting *TRAC*, 750 F.2d at 80).

Plaintiffs argue that weighing the *TRAC* factors is premature. (Dkt. 28 at 34-35.) However, "[t]here is no categorical prohibition on deciding unreasonable-delay claims at the motion-to-dismiss stage," and "the question of whether discovery is necessary depends, as with any sort of claim, on the particular [c]omplaint." *Da Costa v. Immigr. Inv. Program Off.*, 643 F. Supp. 3d 1, 12 (D.D.C. 2022), *aff'd*, 80 F.4th 330 (D.C. Cir. 2023). In this case, the court finds the Complaint and the other materials properly considered at the motion-to-dismiss stage provide sufficient facts to evaluate the *TRAC* factors. *See, e.g.*, *Da Costa*, 80 F.4th at 338-40 (affirming dismissal of lawsuits alleging that decisions on visa-related petitions had been issued after approximately four years under Rule 12(b)(6)); *Infracost Inc. v. Blinken*, 732 F. Supp. 3d 1240, 1253-54 (S.D. Cal. 2024) (reasoning that "plaintiffs in visa-application cases must . . . plausibly allege unreasonable delay under the *TRAC* factors to survive a motion to dismiss" because "authorizing discovery without such a showing would 'lead to a substantial imposition on the Government' given 'the surfeit of lawsuits challenging delays in processing visa applications'") (quoting *Rashidi v. U.S. Dep't of State*, 2023 WL 6460030, at *7 (D.D.C. Oct. 4, 2023)); *Assadian v. Oudkirk*, 694 F.

1   Supp. 3d 1310, 1317-1318 (S.D. Cal. 2023) (evaluating unreasonable delay at the

2   motion-to-dismiss stage in a case involving similar facts).

3                                    i.     Factors 1 and 2: Rule of Reason and
4                                           Congressional Timetable

5          The court considers the first two factors together because "the second can

6   supply content for the first's 'rule of reason.'" *Aminzadeh*, 2024 WL 3811153, at *6

7   (quoting *TRAC*, 750 F.2d at 80).  As to the first factor, the "rule of reason," the court

8   considers "whether the time for agency action has been reasonable." *Vaz*, 33 F.4th at

9   1138.  This factor is the most important, "though it, like the others, is not itself

10  determinative." *In re A Cmty. Voice*, 878 F.3d at 786 (citing *In re Core Commc'ns,*

11  *Inc.*, 531 F.3d 849, 855 (D.C. Cir. 2008)).  As to the second factor, the court considers

12  whether "Congress has provided a timetable or other indication of the speed with

13  which it expects the agency to proceed in the enabling statute." *Vaz*, 33 F.4th at 1137.

14         As numerous courts have recognized, Congress has not prescribed a timetable

15  for processing immigrant visa adjudications, and instead "has given the agencies wide

16  discretion in the area of immigration processing."[11] *Skalka v. Kelly*, 246 F. Supp. 3d

17  147, 153-54 (D.D.C. 2017) (collecting cases).  "Absent a congressionally supplied

18  yardstick, courts typically turn to case law as a guide." *Arab v. Blinken*, 600 F. Supp.

19  3d 59, 70 (D.D.C. 2022) (citations and internal quotation marks omitted).  "Courts

20

21  _____

22  [11] Plaintiffs argue Congress supplied a timetable in 8 U.S.C. § 1571, which states that
    "[i]t is the sense of Congress that the processing of an immigration benefit application
23  should be completed not later than 180 days after the initial filing of the application."
    8 U.S.C. § 1571(b).  (Dkt. 21 at 45-46; Compl. ¶ 335.)  This argument is unavailing
24  both because the Ninth Circuit has interpreted "[s]imilar statutory 'sense of Congress'
    language" to be "'non-binding legislative dicta,'" *Mohsenzadeh v. Kelly*, 276 F. Supp.
25  3d 1007, 1014 (S.D. Cal. 2017) (citing *Yang v. Cal. Dep't of Soc. Serv.*, 183 F.3d 953,
26  961 (9th Cir. 1999)), and because Plaintiffs have failed to identify any authority
    suggesting this provision applies to the State Department's processing of visa
27  applications, as opposed to USCIS's processing of immigrant benefit applications, *see*
28  *Arab*, 600 F. Supp. 3d at 69-70 (collecting cases).

measure the period of delay from the last government action to the issuance of the opinion." *Nusrat*, 2022 WL 4103860, at *6 n.6.

Plaintiffs initiated this action between two to thirteen months after their consular interviews, and to date the delay on their applications varies from nine to twenty months.[12]  (Compl. ¶¶ 31-171.)  The majority of the plaintiffs, fifteen of the seventeen primary applications, have experienced a delay of approximately one year or less.  (*See, e.g.*, *id.* ¶¶ 39, 48, 57, 66, 85, 93, 101, 110, 117, 125, 133, 140, 149, 156, 162.)  The delay on Plaintiffs' visa applications is substantially less than the delays that courts in this Circuit have found unreasonable.  *See, e.g.*, *Ortiz v. U.S. Dep't of State*, 2023 WL 4407569, at *8 (D. Idaho July 7, 2023) ("Generally, courts have found 'immigration delays in excess of five, six, [and] seven years are unreasonable, while those between three to five years are often not unreasonable.'") (collecting cases); *In re Cal. Power Exch. Corp.*, 245 F.3d 1110, 1125 (9th Cir. 2001) ("The cases in which courts have afforded relief have involved delays of years, not months.") (collecting cases).

In fact, numerous courts have found comparable allegations of delay attributable to administrative processing to be reasonable at the motion-to-dismiss stage.  *See, e.g.*, *Infracost*, 732 F. Supp. 3d at 1254 (finding fourteen-month delay due to administrative processing reasonable); *Aminzadeh*, 2024 WL 3811153, at *6 (finding eleven-month delay due to administrative processing reasonable); *Davila v. Cohan*, 2024 WL 711618, at *7 (S.D. Cal. Feb. 21, 2024) (finding ten-month delay due to administrative processing reasonable); *Barazandeh*, 2024 WL 341166, at *8

---

[12] Plaintiffs briefly suggest that the court should measure the delay from the date the visa petition was first submitted.  (Dkt. 28 at 37.)  The court declines to do so because the weight of authority suggests "courts uniformly consider delays since the interview" in administrative processing cases.  *Aminzadeh*, 2024 WL 3811153, at *6 n.3 (collecting cases); *see also Ferdowski v. Blinken*, 2024 WL 685912, at *4 n. 26 (C.D. Cal. Feb. 12, 2024) ("The delay is measured from the time that Plaintiffs attended their interview, not the time that they first petitioned USCIS.").

(finding twenty-month delay due to administrative processing reasonable); *Shahijani*,
2023 WL 6889774, at \*4 (finding eight-month delay due to administrative processing
reasonable); *Isse v. Whitman*, 2023 WL 4174357, at \*6-7 (D.D.C. June 6, 2023)
(finding forty-month delay due to administrative processing reasonable); *Nusrat*, 2022
WL 4103860, at \*6 (finding thirty-two-month delay due to administrative processing
reasonable).

In addition to delay, the court may also consider the "the complexity of the task
at hand, the significance (and permanence) of the outcome, and the resources available
to the agency" in assessing whether the agency employs a rule of reason. *Da Costa*,
80 F.4th at 342 (quoting *Mashpee Wampanoag Tribal Council, Inc. v. Norton*, 336
F.3d 1094, 1102 (D.C. Cir. 2003)). Here, the Complaint's allegations suggest an
identifiable rationale for the delay. The Complaint alleges that Plaintiffs' applications
were placed in "administrative processing," and applicants may be subject to
administrative processing if the consular officer "determines that additional
information is required" or must obtain a Security Advisory Opinion from the Office
of Screening, Analysis, and Coordination. (Compl. ¶¶ 31-171, 197, 199.) The
Complaint further alleges the Office of Screening, Analysis, and Coordination faces a
backlog of 61,000 pending Security Advisory Opinion requests and employs only
thirty-seven analysts. (*Id.* ¶ 199.)

The court notes that adjudicating visa applications often "implicate[s] relations
with foreign powers" and "involve[s] classifications defined in the light of changing
political and economic circumstances.'" *Aminzadeh*, 2024 WL 3811153, at \*6
(quoting *Didban v. Pompeo*, 435 F. Supp. 3d 168, 176 (D.D.C. 2020)). In this
context, the court finds a delay to complete further security screening comports with a
"rule of reason" and is not facially unreasonable considering the limited screening
resources available. *See Da Costa*, 80 F.4th at 342 ("When an agency faces a shortage
of resources to resolve a backlog, we consider those resource limitations and the labor
needed to resolve them in assessing agency delay."); *Mosayebian v. Blinken*, 2024

WL 3558378, at *8-9 (S.D. Cal. July 25, 2024) (finding a delay of "less than a year to
process additional, security-related information about an applicant is not facially
unreasonable" especially "given the alleged backlog faced by" the Office of
Screening, Analysis, and Coordination).

Given that the delays alleged by Plaintiffs are "drastically short of what
constitutes an unreasonable delay in the Ninth Circuit," *see Yavari v. Pompeo*, 2019
WL 6720995, at *8 (C.D. Cal. Oct. 10, 2019), and the cause of delay is consistent
with a rule of reason, the court concludes the first and second *TRAC* factors strongly
favor Defendants.

ii.    Factors 3 and 5: Health and Human Welfare

"The third and fifth factors require the [c]ourt to assess whether human health
and welfare are at stake and whether the nature and extent of those interests are
prejudiced by the delay." *Ghalambor v. Blinken*, 2024 WL 653377, at *6 (C.D. Cal.
Feb. 1, 2024).  Courts typically consider these factors together.  *See, e.g.*, *Najafi v.
Pompeo*, 2019 WL 6612222, at *7 (N.D. Cal. Dec. 5, 2019); *Islam v. Heinauer*, 32 F.
Supp. 3d 1063, 1073 (N.D. Cal. 2014).

Plaintiffs allege they have suffered "severe emotional and financial strain" and
"psychological harm" as a result of the delays on their visa applications.  (*See, e.g.*,
Compl. ¶¶ 13, 267-72.)  In addition, at least one set of plaintiffs, Plaintiff Mahonak
and her spouse, Plaintiff Hamidreza, allege that Plaintiff Hamidreza has been
separated from his family while his visa application remains in administrative
processing.  (*See, e.g.*, *id.* ¶¶ 36-39.)  The court acknowledges the general stresses
inherent to awaiting a decision and that separation from family can cause a
detrimental effect on an individual's health, welfare, and financial situation.  *See, e.g.*,
*R.*, 2023 WL 9197564, at *4 (concluding the third and fifth *TRAC* factors favored the
plaintiff in light of "the significant harm and emotional distress that family separation
causes"); *Isse*, 2023 WL 4174357, at *6-7 (recognizing that "[p]rolonged separation

from a spouse, fiancé, or other immediate family member may be considered a risk to human health and welfare").

However, other than Plaintiff Hamidreza's separation from his family, the court is unable to assess the "the nature and extent" of the delay's impact on Plaintiffs' interests given the conclusory nature of the Complaint's allegations and the fact that these allegations are not tied to any plaintiff's individual circumstances. (*See, e.g.*, Compl. ¶¶ 31-171, 267-72.) Thus, the court concludes the third and fifth *TRAC* factors are neutral. *See, e.g.*, *Da Costa*, 80 F.4th at 344-45 (concluding that general allegations of "financial harms," "uncertainty," and "health and welfare harms" in the plaintiffs' community of origin were insufficient to tip the third and fifth *TRAC* factors in the plaintiffs' favor in part because the complaint failed to "specifically link their personal circumstances" to the conditions alleged); *Jain v. Renaud*, 2021 WL 2458356, at *5-6 (N.D. Cal. June 16, 2021) (finding the third and fifth *TRAC* factors weighed against the plaintiffs where their "supporting declarations largely describe economic and lifestyle interests that are adversely affected by [the government's] delay" and "attest to the stress they experience as a result of the delay in processing their petitions").

iii.    Factor 4: The Effect of Expediting Relief

As to the fourth factor—the effect of expediting relief—the court considers "whether compelling the agency to act would detract from its higher or competing priorities." *Vaz*, 33 F.4th at 1138. Courts have "refused to grant relief, even though all the other factors considered in *TRAC* favored it, where a judicial order putting the petitioner at the head of the queue would simply move all others back one space and produce no net gain." *Mashpee Wampanoag Tribal Council*, 336 F.3d at 1102 (cleaned up).

In this case, an order requiring Defendants to adjudicate Plaintiffs' applications would both prioritize Plaintiffs at the expense of similarly situated applicants and

interfere with Defendants' "discretion in prioritizing its activities and allocating its resources." *Vaz*, 33 F.4th at 1138 (citation omitted).  Even if administrative processing requests are not strictly completed in the order received, as Plaintiffs suggest, "granting the relief Plaintiff[s] seek[ ] would [still] push others, some of whom may not have the resources to commence litigation, further back in the process." *Aghchay v. U.S. Dep't of State*, 2022 WL 19569516, at *3 (C.D. Cal. Dec. 20, 2022).  Accordingly, the court concludes this factor strongly favors Defendants. *See, e.g.*, *Assadian*, 694 F. Supp. 3d at 1318 (reasoning that an order to expediting administrative processing on the visa applications of the plaintiff's parents would "inevitably divert agency resources to their applications at the expense of others" and "put them ahead of others without justification"); *Davila*, 2024 WL 711618, at *8 (finding this factor strongly favored the government where "prioritizing the administrative processing of the application of [p]laintiff's spouse would merely bump [p]laintiff up in the queue of other applicants"); *Shahijani*, 2023 WL 6889774, at *5 (concluding this factor weighed strongly in favor of the government because the plaintiff failed to allege any justification for expediting her husband's administrative processing "ahead of thousands, if not tens of thousands of applications of other noncitizens").

### iv.    Factor 6: Impropriety

The sixth factor requires that the court consider any allegations of impropriety. "[T]his factor does not concern the length or nature of the delay, but whether the reason behind the delay is improper." *Aminzadeh*, 2024 WL 3811153, at *8.  "In absence of any allegations of impropriety, the sixth *TRAC* factor typically is either neutral or weighs in the government's favor." *R. v. U.S. Citizenship & Immigr. Servs.*, 2023 WL 9197564, at *5 (C.D. Cal. Dec. 6, 2023) (citation omitted).

In this case, Plaintiffs argue that Defendants acted in bad faith by "misleading the [c]ourt on the existence of a queue" and providing "conflicting, inconsistent, and

misleading characterizations of 221(g) refusal[s] for administrative processing." (Dkt. 28 at 41; *see also* Compl. ¶ 245.)  The court finds these arguments do not plausibly suggest that the delay in adjudicating Plaintiffs' applications was intentional or the result of impropriety on the part of Defendants. *See, e.g.*, *Milligan v. Pompeo*, 502 F. Supp. 3d 302, 320 (D.D.C. 2020) (noting allegations criticizing the defendants "efforts and prioritization" do not justify a reasonable inference of impropriety); *Babaei*, 725 F. Supp. 3d at 32 (rejecting argument that length of delay creates an appearance of impropriety).  Accordingly, the court concludes this factor is neutral.

v.   Summary of the <em>TRAC</em> Factors

In sum, the first, second, and fourth factors strongly favor Defendants, and the third, fifth, and sixth factors are neutral.  On balance, the court finds the *TRAC* factors suggest the delay in this case is reasonable, particularly given "the importance of the first and fourth factors as well as how heavily they weigh in Defendants' favor." *R.*, 2023 WL 9197564, at *5.  The court concludes Plaintiffs have failed to adequately allege unreasonable delay, and thus **GRANTS** the Motion to Dismiss and **DISMISSES** Plaintiffs' remaining claims for agency action unlawfully withheld and unreasonably delayed under the APA and the Mandamus Act (counts three, four, five, and six).  Because the court finds that no amendment consistent with the Complaint would alter the court's conclusion regarding unreasonable delay at this time, the court **DISMISSES** the Complaint **WITHOUT LEAVE TO AMEND**. *See Armstrong v. Reynolds*, 22 F.4th 1058, 1071 (9th Cir. 2022) (explaining amendment is futile when "it is clear . . . that the complaint could not be saved by any amendment"); *Schreiber Distrib. Co. v. Serv-Well Furniture Co.*, 806 F.2d 1393, 1401 (9th Cir. 1986) (stating a court may deny leave to amend when "the court determines that the allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency").  This dismissal, however, is **WITHOUT PREJUDICE** should later circumstances

1   demonstrate an unreasonable delay.  *See, e.g.*, *Infracost*, 732 F. Supp. 3d at 1258;

2   *Aminzadeh*, 2024 WL 3811153, at \*9; *Shahijani*, 2023 WL 6889774, at \*6.

3   **B.   Plaintiffs' Motion for Preliminary Injunction**

4

5       Plaintiffs seek preliminary relief on their unreasonable delay and unlawful

6   withholding claims in the form of an order requiring Defendants to issue a decision on

7   their visa applications.  (Dkt. 34 at 20-32; *see also* Dkt. 34-22.)  Defendants argue the

8   court should deny Plaintiffs' request for a preliminary injunction because Plaintiffs

9   have failed to demonstrate a likelihood of success on the merits of their claims, a non-

10  speculative irreparable injury, or that the balance of equities and the public interest

11  clearly weigh in Plaintiffs' favor.  (Dkt. 39 at 10-11.)

12      To obtain a preliminary injunction, Plaintiffs must demonstrate "[1] that [they

13  are] likely to succeed on the merits, [2] that [they are] likely to suffer irreparable harm

14  in the absence of preliminary relief, [3] that the balance of equities tips in [their]

15  favor, and [4] that an injunction is in the public interest."  *Am. Beverage Ass'n*, 916

16  F.3d at 754 (quoting *Winter*, 555 U.S. at 20).  As Defendants note, (Dkt. 39 at 10-11,

17  13-14), Plaintiffs seek a mandatory injunction, which "orders a responsible party to

18  take action."  *Marlyn Nutraceuticals, Inc. v. Mucos Pharma GmbH & Co.*, 571 F.3d

19  873, 879 (9th Cir. 2009) (quoting *Meghrig v. KFC W., Inc.*, 516 U.S. 479, 484

20  (1996)); *see also Babaria v. Blinken*, 2022 WL 10719061, at \*6 (N.D. Cal. Oct. 18,

21  2022) (concluding that the plaintiffs sought a mandatory injunction where "the

22  injunction requested would require [defendants] to take action by adjudicating

23  plaintiffs' [visa] applications for adjustment of status").  In seeking a mandatory

24  injunction, Plaintiffs' burden under the first *Winter* factor is "doubly demanding"

25  because they "must establish that the law and facts clearly favor [their] position, not

26  simply that [they are] likely to succeed."  *Garcia v. Google, Inc.*, 786 F.3d 733, 740

27  (9th Cir. 2015) (en banc).

28

The court finds Plaintiffs have not adequately established that they are likely to succeed on the merits of their APA and mandamus claims. "Failure to plausibly allege a claim can bar a finding of likelihood of success on the merits in the preliminary injunction inquiry." *Weiss v. Perez*, 602 F. Supp. 3d 1279, 1304 (N.D. Cal. 2022). Here, the court has already determined that Plaintiffs failed to allege the delay in adjudicating their visa applications is unreasonable, as required to state a claim under the APA and the Mandamus Act. *See* section III(A)(3)(c), *supra*. Plaintiffs did not provide any additional evidence or argument in the Motion for Preliminary Injunction suggesting a likelihood of success on the unreasonable delay element. (*See generally* Dkt. 34-1.) Accordingly, the court concludes that Plaintiffs have failed to demonstrate a likelihood of success on the merits of their unreasonable delay and unlawful withholding claims, let alone that the law and facts clearly favor their position. *See, e.g.*, *Doe v. Fed. Dist. Ct.*, 467 F. App'x 725, 728 (9th Cir. 2012) ("Because Doe's complaint was insufficient to survive a motion to dismiss for failure to state a claim, she could not show a strong likelihood of success on the merits."); *Xiaobing Liu v. Blinken*, 544 F. Supp. 3d 1, 14-15 (D.D.C. 2021) (granting motion to dismiss the plaintiffs' APA and mandamus claims for failing to allege unreasonable delay and consequently denying the plaintiffs' request for a preliminary injunction ordering the defendants to adjudicate their visa applications); *Kelley v. Mortg. Elec. Registration Sys., Inc.*, 642 F. Supp. 2d 1048, 1059 (N.D. Cal. 2009) (granting motions to dismiss and, as a result, denying motion for preliminary injunction for failure to show likelihood of success on the merits).

Because "[t]he failure to show a likelihood of success on the merits precludes injunctive relief," the court need not consider the remaining *Winter* factors and **DENIES** the Motion for Preliminary Injunction. *Assurance Wireless USA, L.P. v. Reynolds*, 100 F.4th 1024, 1049 (9th Cir. 2024) ("Likelihood of success on the merits is a necessary precondition to injunctive relief. Here, that means that the [plaintiffs] cannot obtain injunctive relief even though . . . they face irreparable harm."); *see also*

*Disney Enters., Inc. v. VidAngel, Inc.*, 869 F.3d 848, 856 (9th Cir. 2017) (holding courts "need not consider the other factors in the absence of serious questions going to the merits").

## IV.    DISPOSITION

For the reasons set forth above, the Motion to Dismiss, (Dkt. 21), is **GRANTED IN PART AND DENIED IN PART** and the Motion for Preliminary Injunction, (Dkt. 34), is **DENIED**.  The court **ORDERS** the following:

1. The court **DISMISSES** Counts One and Two **WITH PREJUDICE**.

2. The court **DISMISSES** Counts Three, Four, Five, and Six **WITHOUT LEAVE TO AMEND** but **WITHOUT PREJUDICE** should later circumstances demonstrate unreasonable delay.

3. Because this Order dismisses all claims in this matter, the court **VACATES** the scheduling order, (Dkt. 49), and **DENIES AS MOOT** Defendants' *Ex Parte* Application, (Dkt. 50).

**IT IS SO ORDERED.**

DATED: February 10, 2025

_____
Honorable Fred W. Slaughter
UNITED STATES DISTRICT JUDGE